[No. 18350.    In Bank.—May 13, 1895.]

## BUENA VISTA FRUIT AND VINEYARD COM-PANY, APPELLANT, v. JOHN TUOHY ET AL., RE-SPONDENTS.

EQUITY—MAXIM—PLEADING.—A plaintiff seeking equity must do equity, and a complaint in equity which does not offer to do equity is demurrable.

ID.—ACTION TO ANNUL JUDGMENT OF FORECLOSURE—CANCELLATION OF MORTGAGES—FRAUD — RESTITUTION OF PROPERTY. — A corporation which has received a conveyance of property pursuant to an agreement of purchase made by promoters of the corporation, and which has paid a portion of the purchase money upon account, and given notes and mortgages as security for the residue of the purchase price, cannot maintain an action to have a judgment of foreclosure of the mortgages, and also the notes and mortgages, set aside, annulled, and canceled, on the ground of alleged fraud in their procurement, while retaining the conveyance to it of the property, and not paying or offering to pay the value of the property which it has received.

ID.—RESCISSION—RESTITUTION ESSENTIAL.—A plaintiff cannot attempt to rescind so much of a contract as militates against the interest of the plaintiff, while claiming the benefit of that portion of it in his favor; but he who would rescind a contract must put the other person in as good a situation as he was before, otherwise he cannot do it.

ID.—REMEDY OF PARTY DEFRAUDED—ELECTION.—A party defrauded may rescind and restore within a reasonable time all the value which he has received under the contract, or he may affirm it and sue for damages.

ID.—PRESUMPTION—COMPLAINT—STATEMENT OF FACTS.—Every complaint in an action must be founded upon a theory under which the plaintiff is

entitled to recover, and must state all the facts essential to support such theory, and, failing to do so, it is radically defective, and does not state facts sufficient to constitute ᵇ cause of action.

ID.—COMPLAINT FOR RESCISSION—AVERMENT OF RESTITUTION.—A complaint to rescind notes and mortgages upon the ground of fraud in their procurement must state facts showing that the plaintiff has performed or offered to perform on his part every act necessary to place the defendant in as good a situation as he was before the contract was made.

ID.—COMPLAINT FOR DAMAGES—STATEMENT OF FACTS.—A plaintiff who would confirm a fraudulent contract, and recover damages for the fraud, must so state the facts that the court can see that he is entitled to the relief demanded, or to some specific and certain relief, or his complaint will be held bad on demurrer.

APPEAL from a judgment of the Superior Court of Tulare County.

The facts are stated in the opinion.

*Morehouse & Tuttle,* and *J. A. Percy, Jr.,* for Appellant.

The complaint setting forth a series of fraudulent transactions, and seeking relief from their consequences, contains but one cause of action. (*Wilson* v. *Castro,* 31 Cal. 420; Pomeroy's Remedies and Remedial Rights, secs. 452–61; *Hardie* v. *Bulger,* 66 Miss. 577; *Pfister* v. *Dascey,* 65 Cal. 405; *First Nat. Bank* v. *Moore,* 48 Fed. Rep. 799.) The promoter of a corporation holds a fiduciary relation toward the shareholders. (1 Morawetz on Private Corporations, secs. 545, 546; Cook on Stocks and Stockholders, sec. 651; *Ex-Mission etc. Co.* v. *Flash,* 97 Cal. 626; *Burbank* v. *Dennis,* 101 Cal. 90.) The directors of the corporation could not authorize the president to execute a mortgage to himself. (*Wickersham* v. *Crittenden,* 93 Cal. 29; Civ. Code, secs. 2229, 2230, 2332; 1 Morawetz on Private Corporations, secs. 516–27, and cases cited; *San Diego* v. *San Diego etc. R. R. Co.,* 44 Cal. 113; *Chamberlain* v. *Pacific Wool G. Co.,* 54 Cal. 106; *Davis* v. *Rock Creek etc. Co.,* 55 Cal. 359; 36 Am. Rep. 40; *Graves* v. *Mono Lake etc. Min. Co.,* 81 Cal. 303.)

*John E. Richards, Daggett & Adams,* and *C. L. Russell,* for Respondent.

If the allegations of the bill were true a fraud was

perpetrated on the subscribers to the stock, and there was no liability to pay any thing on their subscriptions. (*Santa Cruz R. R. Co.* v. *Schwartz,* 53 Cal. 106; *Mahan* v. *Wood,* 44 Cal. 462; Wood's Field on Corporations, secs. 69, 70; 1 Morawetz on Private Corporations, sec. 78, p. 141.) The plaintiff cannot enforce an obligation against persons who are not by the terms of the agreement made members of the corporation to be formed. (*Christian College* v. *Hendley,* 49 Cal. 347; *California Sugar etc. Co.* v. *Schafer,* 57 Cal. 396; *West* v. *Crawford,* 80 Cal. 19.) The subscription does not appear to have been assigned to plaintiff, and confers no right upon plaintiff. (*Zabriskie* v. *Smith,* 13 N. Y. 332; 64 Am. Dec. 551; *Smith* v. *Thompson,* 94 Mich. 381; 2 Story's Equity Jurisprudence, sec. 1040 h; *Cross* v. *Sacramento Sav. Bank,* 66 Cal. 462, 468.) Other subscribers would not be allowed to show that they subscribed with the understanding that they were not to perform the contract of subscription. (*Robinson* v. *Pittsburgh etc. R. R. Co.,* 32 Pa. St. 334; 72 Am. Dec. 792; *Bavington* v. *Pittsburgh etc. R. R. Co.,* 34 Pa. St. 358; *New Albany etc. R. R. Co.* v. *Fields,* 10 Ind. 187; *Downie* v. *White,* 12 Wis. 176; 78 Am. Dec. 731; *White Mountains R. R. Co.* v. *Eastman,* 34 N. H. 124; *Mann* v. *Cooke,* 20 Conn. 178; *Mann* v. *Currie,* 2 Barb. 294; *Clem* v. *Newcastle etc. R. R. Co.,* 9 Ind. 488; 68 Am. Dec. 653; 1 Morawetz on Private Corporations, sec. 107.) The complaint states no actionable fraud, the misrepresentation not being of a matter of fact. (*Clem* v. *Newcastle etc. R. R. Co., supra; Dillman* v. *Nadlehoffer,* 119 Ill. 567; *Homer* v. *Perkins,* 124 Mass. 431; 26 Am. Rep. 677; *Gordon* v. *Butler,* 105 U. S. 553; *Chrysler* v. *Canaday,* 90 N. Y. 272; 43 Am. Rep. 166; *Lawrence* v. *Gayetty,* 78 Cal. 126; 12 Am. St. Rep. 29; *Champion* v. *Woods,* 79 Cal. 17; 12 Am. St. Rep. 126; *Holton* v. *Noble,* 83 Cal. 7.) The complaint is defective in failing to show that the land has been reconveyed, or that an offer to reconvey it has been made. (*Gifford* v. *Carvill,* 29 Cal. 589; approved in *Upper San Joaquin etc. Canal Co.* v. *Roach,* 78 Cal. 554; *Herman* v.

*Haffenegger,* 54 Cal. 161; *Purdy* v. *Bullard,* 41 Cal. 444; *Collins* v. *Townsend,* 58 Cal. 614; Civ. Code, sec. 1691; *Wainwright* v. *Weske,* 82 Cal. 196; *Morrison* v. *Lods,* 39 Cal. 385; *Wilson* v. *Sturgis,* 71 Cal. 226; citing Civ. Code, sec. 1691; *Bailey* v. *Fox,* 78 Cal. 396; *Bohall* v. *Diller,* 41 Cal. 535; *Henderson* v. *Hicks,* 58 Cal. 364; *Miller* v. *Steen,* 30 Cal. 402; 89 Am. Dec. 124; *Morrison* v. *Lods, supra; Main* v. *Caserly,* 67 Cal. 127.) Rescission must be *in toto,* or not at all. (*Bohall* v. *Diller, supra.*) The complaint fails to show any actionable fraud, or any damages caused by fraud. ·(*Morrison* v. *Lods, supra; Purdy* v. *Bullard, supra; Reay* v. *Butler,* 69 Cal. 580; *Bailey* v. *Fox, supra;* Civ. Code, sec. 3515.)

SEARLS, C.—This action is brought by the corporation plaintiff, to have a judgment of foreclosure against its property and a deficiency judgment entered after a sale in foreclosure set aside, and to have the mortgages and notes upon which the foreclosure proceedings were had set aside, annulled, and canceled, and that the defendants, and each of them, be enjoined and restrained from conveying, disposing of, or encumbering the land and premises mortgaged.

Defendants demurred to the complaint by two separate demurrers, one on behalf of Tuohy and the other by all the other defendants. These demurrers were sustained by the court, and plaintiff declining or failing to amend after notice and leave so to do, final judgment was entered in favor of defendants. Plaintiff appeals from the judgment.

The complaint, with the exhibits thereto attached and made a part thereof, covers over fifty pages of the printed transcript. To epitomize it within brief limits, and at the same time to illustrate it fairly, is quite difficult.

The following synopsis will illustrate its more salient features: On the thirteenth day of May, 1891, John Tuohy, one of the defendants, was the owner of 720 acres of land, situate in the county of Tulare, state of

California; also of certain water rights, stock in water companies, etc., and certain personal property, consisting of six mules, etc., their harness, five wagons, and a quantity of farming tools.

On said last-mentioned day said Tuohy entered into an agreement in writing with E. J. Cox, E. De Witt, and P. F. Wood, the other defendants herein, as parties of the second part, by the terms of which he agreed to sell to them, and they agreed to buy, all of the property aforesaid, on September 1, 1896, with interest at the rate of 8 per cent per annum, payable semi-annually in advance, from and after September 1, 1891.

The parties of the second part were to take possession of the property at once, to prepare the land for planting trees and vines; to plant 200 acres to trees and vines during the season of 1892, to care therefor, and to plant the residue to other crops. They further agreed to incorporate a stock company to plant the land to fruit and vines, to advertise the same and use due diligence to sell the same, and, if they carried out the agreement, Tuohy was to convey all of the property by good and sufficient deed, etc., on the 1st of September, 1891, and, if the second parties failed to perform, they were to return the property to Tuohy on September 1, 1891, until which time they were to have the option to buy, but, if they failed, they were to pay all expenses up to said last-mentioned date. On the same day Cox, De Witt, and Wood, the parties of the second part in the foregoing agreement, entered into another agreement, as parties of the first part, with the persons whose names are thereto subscribed, each separately, and not one for the other, which recited that, whereas it is proposed to form a corporation, etc., to be entitled the " Buena Vista Fruit and Vineyard Company," with a capital stock of $144,000, divided into 720 shares of $200 each, for the purpose of purchasing 720 acres of land (then follows a description of the land and property as in the first agreement) at the price of $100 per

acre, and to plant and set out thereon fruit trees and vines of first-class marketable varieties.

The agreement then proceeds as follows: " Now, therefore, this agreement witnesseth, that the said parties of the first part hereby agree to sell to the said parties of the second part, and the said parties of the second part hereby agree to purchase from the said parties of the first part, the above-mentioned lands, water rights, and personal property, and all improvements that shall be made thereto up to the 1st of September next, at the price of $100 per acre. The title to said lands to be shown to be good and valid at law, by an abstract to be furnished to said parties of the second part, to be paid as follows: $10,000 cash out of the first payment upon subscription to the stock as hereinafter mentioned, and the balance on the 1st of September, 1896, with interest thereon in the mean time, from said 1st of September next until paid, at the rate of 8 per cent per annum. Said interest to be paid by even and equal half-yearly payments in advance, and it is agreed that on the 1st day of September next, upon said payment of $10,000 and interest, a deed shall be made to said corporation of said lands and premises, and a mortgage thereof by said corporation for the balance of the purchase money and interest. The said parties of the second part do hereby severally covenant and agree, each for himself, to and with the parties of the first part, that he will each severally take the number of shares of the capital stock of said corporation set opposite their respective signatures hereto, and pay at the time of their signature hereto, to E. J. Cox, cashier of the Tulare County Bank, as treasurer and trustee, $20 per share upon the actual number of shares so respectively subscribed for by each of them, the said parties of the second part; and on the 1st of December next, and quarterly thereafter for the term of three years next ensuing, the sum of $5 per share for said shares, making in all $80 per share; such payments to be made quarterly as aforesaid. Said E. J. Cox, as such treas-

urer and trustee, shall, and he is hereby authorized and
directed to apply said money so to be received by him
as follows: First, in payment of said cash payment on
said lands, and interest, and the balance as the board
of directors of said corporation shall direct, in the im-
provement of said lands, as follows, viz: The planting
in the season of 1891–92, in a good and workmanlike
manner, of about 200 acres of said lands to grapes, and
including the Chinese contract of about 100 acres of
fruit trees, and the balance to grain, etc., and thereaf-
ter, unless the directors appoint another treasurer, said
money shall be paid by said treasurer for the planting
in the season of 1892–93 of so much of said land as the
directors shall determine—and thereafter as said di-
rectors shall direct.   The parties of the first part to
pay all the taxes against said land for the term of five
years.   This agreement is made conditional and de-
pendent upon the subscription, on or before the 1st of
September next, of at least 600 shares of said capital
stock; and should that number not be subscribed by
that date, then the said treasurer shall repay to said
subscribers all such deposits or cash payments he may
have received to the respective persons who shall have
paid the same."

The agreement was signed by defendants Cox, De Witt,
and Wood, and by some 47 persons as parties of the sec-
ond part, with the number of shares taken by each set
opposite his name, aggregating 674 shares.   Each of
the defendants herein, including Tuohy, subscribed for
25 shares.

To this agreement is appended: 1. A list of eight
names of those who subscribed for an aggregate of 85
shares, with a statement signed by Cox, De Witt, and
Wood, to the effect that said eight parties have been re-
lieved from taking their stock, and are "relieved from
payment, their stock never having issued."

2. An assignment of the agreement, with the claims
accruing therefrom, to the Buena Vista Fruit and Vine-
yard Company, which it is recited has been organized

by the undersigned. This assignment is signed by said Cox, De Witt, and Wood, and is acknowledged before a notary public January 14, 1892.

Neither of the above documents mentioned in 1 and 2 is dated.

The corporation was organized, according to the complaint, on or about the sixth day of June, 1891, for the purposes, with the capital stock and number of shares, etc., as specified in the agreement set out and quoted herein, but with other and further objects than those specified in said agreement. John Tuohy, D. W. Madden, E. De Witt, P. F. Wood, N. A. Hummel, J. F. Boller, and R. B. Bohannon were named as the directors of said corporation, and John Tuohy was elected president, D. W. Madden vice-president, and R. B. Bohannon secretary.

On the sixteenth day of September, 1891, the corporation plaintiff, pursuant to resolution of its board of directors, and for the purpose of completing the purchase of the property hereinbefore mentioned, and paying the purchase price thereof over and above the cash payment of $10,000, made its two several promissory notes payable to defendant Tuohy, one for $36,000, and the other for $26,000, payable September 1, 1896, with interest at 8 per cent per annum, payable semi-annually in advance, etc., and to secure the payment of said notes executed to said Tuohy two several mortgages upon the real estate hereinbefore mentioned. The mortgages provided that if default should be made in the payment of interest when due, the whole sum, principal and interest, should become due at the option of the mortgagee.

The $26,000 mortgage was subject, and the lien thereof subordinate, to that of the $36,000 mortgage. Default having been made in the payment of interest on the $36,000 note, an action was brought to foreclose the mortgage on or about June 13, 1892.

An answer was filed admitting the making of the note and mortgage by the corporation, and thereafter, and on the eighth day of February, 1893, a decree of

foreclosure was entered, under which, on or about April 1, 1893, the land was sold, John Tuohy becoming the purchaser, for $32,300, leaving a deficiency of $8,369.80, for which judgment was entered in favor of Tuohy and against the corporation plaintiff herein.

Tuohy, as president, and Bohannon, as secretary, executed for and in the name of the corporation the foregoing notes and mortgages. In January, 1893, a set of directors was elected, not including the defendants herein, or any of them, and thereafter and on the twentieth day of September, 1893, this action was instituted.

The property referred to was conveyed to the corporation plaintiff by Tuohy on the sixteenth day of September, 1891, the date of the execution of the mortgages, which conveyance, together with the mortgages, was duly recorded.

The foregoing contains a chronological statement of the more important transactions involved in the case, irrespective of the fraud charged.

The more important allegations of fraud are:

1. The defendants herein, on or about June 6, 1891, agreed among themselves that, with Bohannon, Boller, Madden, and Hummel, they would organize a corporation to which the property should be sold; that Cox, Wood, and De Witt should act as promoters of said proposed corporation, represent to the public that they were the owners of the property to be sold; that the value thereof was $72,000, for which sum they would convey it to the corporation about to be formed; that defendant Tuohy should receive $36,000 thereof from the corporation, and that the residue of the purchase money should be received by the other defendants as a commission for acting as promoters; that this agreement was kept secret among the defendants, who held out to the world that Cox, Wood, and De Witt were owners of the property, and to cheat and defraud the subscribers to said corporation prepared and circulated the agreement (Exhibit B) which represented them as the owners, and that the value of the property was $72,000,

and could not be bought for a less sum; that they well knew they were not the owners, and that their representations were false, and that the property was only worth $36,000. That the subscribers and stockholders knew nothing of their agreement to purchase at $36,000 from Tuohy until about November, 1892. That said defendants, Wood and De Witt, circulated the agreement for signatures, and that subscribers to the extent of 85 shares were fraudulent and false, and were obtained only for the purpose of causing the *bona fide* subscribers to believe they were genuine, and to induce others to subscribe, and, believing them to be genuine, others were induced to sign.

That in fact 600 shares had not been subscribed for in good faith on the 1st of September, 1891, all of which defendants well knew, but, with intent to cheat and defraud the subscribers out of the sum of $10,000, paid in upon subscriptions, they represented that 674 shares had been subscribed, when in fact only 589 had been subscribed; that defendants paid nothing on the 25 shares subscribed by each of them, and that only $9,780 was paid in, which defendants appropriated to their own use; that they withheld all knowledge that Cox, Wood, and De Witt were to receive a commission of $36,000 from the subscribers, etc.

2. That, with a design to cheat and defraud the *bona fide* subscribers out of the sum of $36,000, defendants and a few others, on or about June 6, 1891, without the knowledge of the *bona fide* subscribers, met and organized the corporation, although it was understood and agreed by and between the parties to agreement B that the corporation should not be formed until September 1, 1891.

That the object of sooner forming the corporation was to defraud the subscribers out of $36,000, and to enable themselves to be elected directors that they might control and manage the corporation for their own purposes. The complaint then proceeds to charge that, with a view to defraud the subscribers out of the $36,000 aforesaid,

the directors called a special meeting of the board at which none of the subscribers were present; resolved to consummate the purchase of the lands and water rights, accept the deed thereof, and to execute the notes and mortgages for the purchase price, less $10,000, paid in cash, etc.

That most of the subscribers were nonresidents of Tulare county, and were not at Tulare city, the principal place of business of the corporation, and believing the conduct of the corporation to be fair and honest, took stock in the corporation and paid therefor as provided in agreement B.

There are various other allegations of fraud going to support the main charge, to the effect that the value of the property was but $36,000, $10,000 of which has been paid, and that the defendants are seeking to defraud the *bona fide* stockholders out of the residue of the purchase money, and that the second note and mortgage are in fact held for the benefit of defendants Cox, Wood, and De Witt.

The first suggestion which presents itself to the mind upon a perusal of the complaint is that the plaintiff is seeking equity without doing equity.

In other words, it has received a conveyance of property admitted to be of the value of $36,000, upon account of which it has paid $10,000, and given its notes and mortgages as security for the payment thereof, for the residue of the purchase price.

It now seeks by this action to have these notes and mortgages set aside and annulled, without canceling the conveyance to it of the property, and without paying, or offering to pay, the value of the property which it has received.

Manifestly this cannot be permitted in a court of equity.

Practically it is an attempt to rescind so much of the contract as militates against the interest of the plaintiff, while claiming the benefit of that portion of it in its favor.

As a precedent for such claim we are referred to the case of *Ex-Mission etc. Co.* v. *Flash,* 97 Cal. 610.

An examination of that case will show that it does not support the contention here. The germ of that case was that the defendants, promoters of a corporation, had by their agents falsely and fraudulently represented that 4,500 acres of land had been contracted for at $25 per acre, whereas in fact it had been contracted for at $5.05 per acre. The land was conveyed to the corporation at $25 per acre.

The corporation or its stockholders had already paid a sum to the defendants in excess of the purchase price of $5.05 per acre, and had given its notes secured by a mortgage for the residue of the purchase price at $25 per acre, amounting to $75,000. The action was brought to cancel and annul a decree of foreclosure of the mortgage and the notes and mortgages, etc.

Under these circumstances the defendants having been paid more than was justly due them, it was held that a rescission of the sale by plaintiff was not necessary, and, as no injustice had been done to defendants, the decree in accordance with the prayer of plaintiff's complaint was upheld.

Every complaint in an action should be founded upon a theory under which the plaintiff is entitled to recover, and should state all the facts essential to support such theory.

Failing in these respects it is radically defective, and does not state facts sufficient to constitute a cause of action.

A party defrauded may rescind and restore within a reasonable time all of value which he has received under the contract, or he may affirm it and sue for damages. (*Gifford* v. *Carvill,* 29 Cal. 590; *Herrin* v. *Libbey,* 36 Me. 357; *Burton* v. *Stewart,* 3 Wend. 239; 20 Am. Dec. 692; *Burbank* v. *Dennis,* 101 Cal. 90.)

In the case last cited this court held in substance that, where a promoter of a corporation has been guilty of fraud, the company may elect to set aside the con-

tract or to recover the promoter's secret profits. This is not an action to recover the secret profits made by the defendants as promoters of the corporation. No accounting of such profits is sought. No rescission of the conveyance is averred or asked for.

The theory of the complaint is:

1. That defendants were promoters of the corporation plaintiff.

2. As such promoters they were guilty of fraudulent practices whereby plaintiff was induced to purchase property for $72,000 which was only worth $36,000, and to pay therefor $10,000 in cash, and to give their notes secured by mortgages for the residue of $62,000.

3. That these notes and mortgages being fraudulent, plaintiff may retain the property conveyed to it so worth $36,000 and maintain an equitable action for the cancellation of the notes and mortgages without further compensation for the property purchased. Conceding the facts in support of this theory to be well stated, they do not entitle plaintiff to recover. He who would rescind a contract must put the other party in as good a situation as he was before, otherwise he cannot do it. (Chitty on Contracts, 276.) And his complaint, framed with this object, must state facts showing that he has performed or offered to perform on his part every act necessary to thus place the defendant.

4. If he would confirm the fraudulent contract, and recover in damages for the fraud, he must so state the facts that the court can see that he is entitled to the relief demanded, or to some specific and certain relief, or his complaint will be held bad on demurrer.

In cases where an answer is filed the court may, under section 580 of the Code of Civil Procedure, grant "any relief consistent with the case made by the complaint and embraced within the issue." But we are not now dealing with such a case.

*Non constat*, that any answer will ever be interposed here, and the question arises as to the sufficiency of the complaint standing alone and confronted by a demurrer

—a case in which the demand of the complaint limits the relief; a case in which, if the complaint is adjudged sufficient, the sequence must follow that, in a court of equity, a plaintiff who has been defrauded may take property worth $36,000 for $10,000 and leave the defendants to pay all taxes upon such property for five years under their covenant so to do.

In other words, that a plaintiff who has obtained property under a contract tainted with fraud on the part of the vendor, may confirm such contract as to the benefit, and repudiate its burdens.

If to do so works injustice to the defendant, it cannot be done.

There are other objections to the complaint of equal importance, but the objection noticed is deemed fatal to the pleading, and the judgment appealed from should be affirmed.

Vanclief, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

McFarland, J.,    Garoutte, J.,
Van Fleet, J.,    Henshaw, J.,
Beatty, C. J.