WILLS v. PORTER et al. (PIERPONT et al., Interveners).*

L. A. No. 697; July 31, 1900.

61 Pac. 1109.

**Contract of Corporation—Rescission—Return of Consideration.** Civil Code, section 1691, provides that one party cannot rescind a contract without the consent of the other party unless he restores to the latter everything of value which he has received from him thereunder. A corporation which owed $46,650 to its principal stockholder borrowed money from a bank, and, in consideration of his guaranteeing its note, paid its indebtedness to him before maturity. Held, in an action by other stockholders to compel repayment to the corporation, that the action could not be maintained without releasing the principal stockholder from his guaranty.

**Contract of Corporation—Rescission—Delay.**—Civil Code, section 1691, provides that a party entitled to rescind a contract must do so promptly. A corporation which owed $46,650 to its principal stockholder borrowed money from a bank, and, in consideration of his guaranteeing its note, paid its indebtedness to him before maturity. Held, that an action brought by other stockholders two years thereafter to compel repayment to the corporation could not be maintained, no excuse being shown for the delay.

**Corporation.—Where the Complaint in an Action to Compel Repayment** of money paid by a corporation to its principal stockholder alleged that complainants had no knowledge thereof at the time, but did not allege when they obtained knowledge, it will be presumed on appeal that they obtained knowledge at least by the day following the transaction.

---

*For subsequent opinion in bank, see 132 Cal. 516, 64 Pac. 896.

Corporation.—Where a Corporation Pays a Debt Due Its Principal Stockholder before maturity, as a consideration for his guaranteeing its note, repayment to the corporation will not be enforced by a court of equity at the suit of other stockholders, without a showing that the corporation or its stockholders were injured in some way.[1]

APPEAL from Superior Court, Los Angeles County.

Action by William L. Wills against George K. Porter and another (Mary Pierpont and others, interveners). From a judgment in favor of plaintiff and interveners and from an order denying a new trial defendants appeal. Reversed.

H. W. O'Melveny and J. H. Shanklin (J. S. Chapman of counsel) for appellants; Winder & Davis for respondent; Smith, McNutt & Hannon for interveners.

PER CURIAM.—This action was brought by plaintiff, as a stockholder of the Porter Land and Water Company, a corporation, for the purpose of annulling a certain resolution passed by the board of directors of said corporation, and of recovering of defendant Porter $46,650, and interest thereon; the said sum having been paid to Porter under the authority of the board of directors, and by virtue of said resolution. A complaint in intervention was filed by certain other stockholders. A demurrer was interposed to the complaint and to the complaint in intervention, and overruled, and answers filed. After trial, findings were filed, and judgment entered thereon in favor of plaintiff and the interveners. A motion for a new trial was made and denied, and this appeal is from the judgment and order denying the motion.

We think the demurrer to the amended complaints should have been sustained. The complaints, as amended, allege, in substance, that on the twenty-third day of April, 1887, the defendant Porter entered into a written contract with one McFarland, by the terms of which the corporation defendant was to be formed, and Porter was to convey to it, for the considerations therein named, 16,000 acres of land of the ranch Ex-Mission San Fernando. Porter then supposed the ranch contained 18,000 acres, and under the contract he was to retain 2,000 acres for his own use, and to

---

[1] Cited in the note in 97 Am. St. Rep. 40, on actions by stockholders on behalf of corporations.

convey just 16,000 acres to the corporation, and if, upon a survey being made of the ranch, there proved to be less than 18,000 acres, the amount reserved by Porter should be diminished, and the full 16,000 acres conveyed to the corporation. The corporation was formed as provided for in said contract, and a survey made of the ranch, by which it was found that the ranch contained 18,734 acres, or 734 acres more than the number of acres to be conveyed to the corporation after reserving 2,000 acres for Porter. The corporation, after its formation, duly adopted the contract so made by Porter with McFarland, and after the survey of the said ranch it entered into a supplemental contract with Porter in regard to the 734 acres. This supplemental contract recited that the original contract was for the conveyance of 16,000 acres, and that there was 16,734 acres, and that it was impracticable to segregate the 734 acres from the 16,000 acres. It then provided that Porter should convey the 734 acres to the corporation by the same conveyance and with the 16,000 acres. It was further provided, as the consideration for the 734 acres, that the corporation should improve, subdivide and sell it, with the 16,000 acres, and out of the proceeds, after paying expenses and commissions pro rata, to account for and pay to Porter the sum of $40 per acre for each and every acre of the said surplus, and all sums above $40 per acre to be retained by the corporation as compensation for improving and selling it. It was further provided that the payment to Porter for the 734 acres should be made whenever dividends on the capital stock should be declared, and should in all cases be in the proportion of money on hand when the dividends are declared that 734 bears to 16,734, less the proper proportion of costs, expenses and commissions. These payments to Porter were to bear interest from the 16th of August, 1887, at the rate of six per cent per annum; but Porter was to have no interest, except as a stockholder, in whatever interest might be realized upon the profits of the sales of the 734 acres. The said Porter, in pursuance of the contracts, duly executed a deed to the corporation of the 16,734 acres, and certain personal property also included in the agreement. The capital stock of the corporation consisted of 524 shares, of which defendant Porter owns 336, the plaintiff 5, and the remaining shares by the interveners and others named in a list attached to the complaint. The directors of the corpo-

ration were, at all times named in the complaint, Yarnell, •
Threlkeld, Graves, Forrester, Witmer, Hubbard and Coch-
ran; and, of these directors, it is alleged that Yarnell,
Threlkeld, Witmer and Graves hold each one share only, con-
veyed to them respectively by Porter to qualify them to serve
as directors, and that they have at all times acted in the in-
terest of Porter, and as his agents and trustees. On the
twenty-ninth day of March, 1895, the corporation was in-
debted, over and above its indebtedness to Porter, in the sum
of about $50,000; and on said date, at a meeting of the di-
rectors of the corporation, for the alleged purpose of con-
centrating all the indebtedness, a resolution was passed to
borrow from the Los Angeles Savings Bank the sum of
$100,000, and that the corporation execute its note and mort-
gage for the amount, with interest at the rate of seven per
cent per annum net. And the board of directors further
adopted the following resolution: "In consideration of the
guaranty by Geo. K. Porter of this company's note to the
Los Angeles Savings Bank for $100,000, resolved, that this
corporation pay to said Geo. K. Porter the amount due him
under the contract of date June 29, 1887, at this time, out
of money borrowed this day, instead of waiting until the
same can be paid out of the proceeds of land sales, the
amount now due being $46,650 or thereabouts; the said Geo.
K. Porter to rebate interest on the amount paid him, at the
rate of one per cent per annum, until said loan of $100,000
is paid off." It is further alleged that in pursuance of the
said resolution the said loan was effected, and that the said
note and mortgage of $100,000, and some interest thereon,
still remain due and unpaid; that the agreement of Porter
to guarantee the payment to the Los Angeles Savings Bank
was without substantial value; and that Porter received
$46,650 of the said money so borrowed by the corporation.
It is alleged that in the passage of the said resolution a ma-
jority of the directors were acting under the influence of
Porter and for his interest, and under his direction and con-
trol; that the resolution was procured by the undue influence
of Porter, and was the result of a fraudulent contrivance and
combination between the said directors and Porter "in order
to pay the debt of the said Porter, that was not due, and that
would come due only upon the sales of land." It is further
alleged that on the nineteenth day of March, 1897, the plain-

tiff demanded in writing of the directors of said corporation "to take steps at once to procure the rescission of said contract, and to compel the said Porter to account to the said corporation for the money received by him as aforesaid, or, upon his refusal, to take the proper legal proceedings to compel him to do so"; that the directors refused to take any such steps or to institute any legal proceedings, and for this reason the plaintiff, as a stockholder, brings this suit, and makes the corporation a defendant. The prayer of the complaint is that the resolution of March 29, 1895, be rescinded and set aside, and also the contract thereby made between the said corporation and the said Porter, and that Porter be required to pay the said sum of $46,650, with interest thereon at the legal rate, to the corporation, or that the same be credited and paid upon the note and mortgage held by the Los Angeles Savings Bank.

The complaint was filed some two years after the resolution complained of and after the note and mortgage had been executed, and guaranteed by Porter. There is no allegation that any interest has been paid upon the note and mortgage, and we must therefore assume that the note, and interest thereon since the twenty-ninth day of March, 1895, still remains due and unpaid, and guaranteed by Porter. The complaint expressly alleges that the guaranty by Porter of the $100,000 note was made in consideration that the corporation pay to Porter the $46,650, and that the money was paid to him. While the corporation still has the loan secured by the guaranty of Porter, it is sought to recover back the consideration for which the guaranty was given and still hold Porter as guarantor. Relief is asked as to that portion of the resolution that is injurious to the corporation, while the benefit that was given by Porter in consideration of the resolution is to be still retained. No offer is made to pay the $100,000 note and interest, and nothing to show any intention to release the defendant Porter therefrom. The plaintiff and the interveners, as stockholders, come into a court of equity, and invoke its aid to protect the corporation from what is claimed to have been an unjust and inequitable transaction. He who seeks equity must do equity. Plaintiff cannot ask the aid of the court to be relieved of the burdens of a contract, and at the same time adopt and retain the benefits. If the circumstances are such that the plaintiff cannot

do equity, he cannot come into a court of equity for relief. His prayer is to have the resolution and contract declared null and void and rescinded, but there is no offer to place the defendant Porter in statu quo. It is provided in section 1691 of the Civil Code, that "rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules: (1) He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence or disability, and is aware of his right to rescind; and (2) he must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so." In this case the corporation received from Porter the guaranty of its promissory note for $100,000, which guaranty is presumed to be valuable. It has in no way attempted to release him from this guaranty. Before a party has the right to rescind a contract, he must restore the other party to the condition in which he was before the contract was made: Watts v. White, 13 Cal. 321; Buena Vista etc. Vineyard Co. v. Tuohy, 107 Cal. 254, 40 Pac. 386. If it becomes impossible to place the parties in statu quo, there can be no rescission: Bailey v. Fox, 78 Cal. 389, 20 Pac. 868; State v. McCauley, 15 Cal. 430; 21 Am. & Eng. Ency. of Law, tit. "Rescission," p. 89; 2 Pars. Cont., p. 678. The plaintiffs and interveners do not appear to have used due diligence or to have acted promptly in bringing this action: Civ. Code, sec. 1691; 2 Pars. Cont., p. 680; Barfield v. Price, 40 Cal. 542. In the case of Marten v. Wine Co., 99 Cal. 355, 33 Pac. 1107, it was held that a delay of three months in an offer to rescind a purchase of stock, after discovery of the facts constituting fraud in the purchase, was fatal to a rescission. In Bailey v. Fox, 78 Cal. 389, 20 Pac. 868, it was held that a delay of four months after the discovery of fraud in a partnership contract was fatal to the right to rescind. In this case there was a delay of two years, with no excuse for the delay. During all this time the defendant Porter has been held on his guaranty, and is still so held. The property has been in the possession and control of the corporation. Porter has been lulled into letting the matter rest, thinking the land had been fully paid

for. The complaints, as amended, allege that when said resolution was passed and said acts consummated the complainants had no notice thereof, and no knowledge that any such acts had been consummated. They do not say when they obtained knowledge thereof, and we must presume that they had such knowledge at least the day after, to wit, March 30, 1895.

Again, it does not appear that the resolution and acts complained of were beyond the authority of the board of directors, or that they injured the corporation or the stockholders in any way. The land had been deeded to the corporation, and it may have been, and may now be, of great value, as the complaint does not state to the contrary. The interest on the amount to become due Porter ceased after he was paid. It is not claimed that the amount was not the amount of $40 per acre, and interest thereon up to the time of the resolution. The corporation might have been in a condition to pay off the $100,000 mortgage within a short time after its execution. If so, it would be free from the claim of interest by Porter. The acts complained of must appear from the complaint to have been injurious to the plaintiff, before he can invoke the aid of a court of equity: Board v. Younger, 29 Cal. 172; Purdy v. Bullard, 41 Cal. 447; Marriner v. Dennison, 78 Cal. 211, 20 Pac. 386; 21 Am. & Eng. Ency. of Law, 34, note 2, tit. "Rescission." In this case the resolution provided that Porter was to rebate interest on the amount paid him at the rate of one per cent per annum until the $100,000 loan was paid off. This arrangement made the interest to be paid by the corporation upon the purchase price of the 734 acres no greater than six per cent per annum—the amount it had agreed to pay Porter. It does not appear to us how it could injure the corporation merely to change its creditor. A complaint must be measured by its language, and in the face of a demurrer the court cannot presume any facts outside of those alleged in the complaint. The facts stated must be such that, if proven, they would entitle plaintiff to judgment. The judgment and order are reversed.