[Civ. No. 3740. Fourth Dist. Mar. 1, 1949.]

FRANK REINA, Appellant, v. ROSE ERASSARRET, as Executrix, etc., et al., Respondents.

West, Vizzard & Howden and Gordon Howden for Appellant.

Harvey, Johnston, Baker & Palmer and Claude F. Baker for Respondents.

GRIFFIN, J.—Action to set aside conveyance and quiet title. Plaintiff and appellant Frank Reina was the husband of Lizzie Reina, now deceased. They were the parents of defendants Samuel Reina, Josephine Reina, Rose Erassarret, Frances Argain, and John L. Reina. According to plaintiff's complaint, on August 27, 1946, he and his wife owned, in joint tenancy, certain real property located in Kern, Fresno, and San Luis Obispo Counties. At that time Lizzie Reina was

sick and feeble and confined to her bed and was weakened physically and mentally. It is alleged that she was of Italian descent, and unable to read or write in any language; that defendants Rose and Frances procured counsel and caused to be prepared on August 27, 1946, a grant deed of gift from the mother to her five children. It purportedly conveyed her undivided one-half interest in the property mentioned. It is alleged further that she was induced to execute the deed by undue influence and false and fraudulent representations on the part of defendants, i. e., representations that said deed would not take effect until her death and that she would retain full control and enjoy the profits of her joint tenancy until her death; that they recorded the deed immediately. It then alleges that as soon as the mother discovered that the deed had been recorded and that it purported to divest her of her present right, title and interest, she made demand upon all defendants for a reconveyance; that Josephine, Samuel and John did execute quitclaim deeds back to her and that they were duly recorded by plaintiff; that Rose and Frances refused to do so; that on October 17, 1946, Lizzie Reina filed an action against the latter two, praying that the deed executed by her be set aside as to the interest purported to be conveyed to them, and recorded a *lis pendens*; that on October 22, 1946, Rose and Frances executed a grant deed to their attorneys, Harvey, Johnston, Baker & Palmer, purporting to convey a 40 per cent interest in the described land, which deed was recorded on October 24, 1946. These attorneys and their respective wives are named parties defendant in this action.

Lizzie Reina died testate. Her will was admitted to probate and on November 22, Rose received letters testamentary. On February 24, 1947, upon application of the executrix, an order of the court was made dismissing the action brought by the mother against Rose and Frances.

Plaintiff prays that the deed of August 27, 1946, be declared void and that it be decreed that no defendant has any right, title or interest in said lands; that it be established that plaintiff and his wife were the owners of said land in joint tenancy at the time of her death and that upon her death her interest terminated and that plaintiff is now the owner thereof in fee simple.

Defendants Samuel, Josephine and John did not appear. Their defaults were taken. The other defendants appeared by demurrer, which was overruled. An answer was filed denying generally the claims of plaintiff. They set up special

affirmative defenses which were later made and interposed on an objection to the introduction of any evidence at the trial. This objection was sustained on the grounds: (1) That the complaint did not state facts sufficient to constitute a cause of action; (2) That plaintiff was without the legal capacity to sue in that he was not a party to the instrument sought to be avoided and was without right or capacity to avoid the instrument or to impair the estate of the decedent by seeking to avoid an instrument to which he was a third party; (3) That there was a defect of parties plaintiff in that the complaint did not show that plaintiff was entitled to represent the decedent in any action to avoid an instrument; and (4) That there was a misjoinder of parties defendant in that the executrix was joined in a suit, the basic purpose of which was to compel the avoidance of transfers where the option so to avoid was not the right of the plaintiff but was the right of the executrix.

Following this ruling judgment was entered in favor of the appearing defendants. Plaintiff appealed.

■ The effect of the ruling of the trial court was to give a judgment on the pleadings in favor of the defendants who appeared. (*Burnand* v. *Nowell*, 84 Cal.App.2d 1 [189 P.2d 796].) ■ The truth of the allegations contained in the complaint must be assumed and if the pleadings allege ultimate facts which disclose the existence of a cause of action in favor of the plaintiff, then the judgment, as rendered, must be reversed and the cause proceed to trial. (*Genuser* v. *Ocean Accident & Guarantee Corp.*, 42 Cal.App.2d 673 [109 P.2d 753].)

The main argument presented by plaintiff for consideration is that since he and his wife were the possessors of the real property in question and title was held by them as joint tenants, in the absence of fraud of the defendants, the plaintiff would have owned, upon the death of his wife, all of the real property described; that by reason of their fraud and undue influence, as alleged, he was deprived of this one-half interest; that having a property interest in the whole of the estate, he may complain of the act which damaged his estate. He concedes that his joint tenant might have lawfully conveyed away this interest by her *free and voluntary act.*

Defendants justify the ruling of the trial court on this issue, upon the theory that Lizzie Reina had the right, during her lifetime, to break the joint tenancy, and name her five children as grantees; that under no circumstances has a joint tenant

capacity to bring such an action merely by reason of such joint tenancy relationship; that since Lizzie Reina accepted a *r*econveyance of three-fifths of the property deeded out, she conclusively showed that she relied upon the original conveyance rather than the theory of repudiation of the entire instrument and thereby voluntarily destroyed the effect of the joint tenancy; that since her subsequent suit against the other two children was brought for the purpose of setting aside the former deed executed by her *only* as to the interest purportedly conveyed to *them,* it was not intended that she restore the joint tenancy relationship; that since the law does not permit a partial rescission, it must be held that there was an intended destruction of the joint tenancy, citing *Buena Vista etc. Co.* v. *Tuohy,* 107 Cal. 243, 246 [40 P. 386].

 The works of ancient law writers and jurists (Coke on Littleton, § 286; 2 Blackstone's Commentaries, 183; and 1 Washburn on Real Property, p. 646, para. 14) in speaking of the nature of a joint tenancy, recite that under the common law the interest which a joint tenant has as survivor is not a new one acquired by him from his cotenant upon the latter's death, for his own interest is not changed in amount, but only his cotenant's is extinguished; that title does not vest in the survivor upon the death of the cotenant nor does it descend to him from such cotenant because it has already vested in him by, and at the time of, the original grant; and that the interest of two joint tenants is not only equal or similar but also one and the same. (See *Hannon* v. *Southern Pacific Railroad Co.,* 12 Cal.App. 350 [107 P. 335]; *In re Peterson's Estate,* 182 Wash. 29 [45 P.2d 45].) However, in *Delanoy* v. *Delanoy,* 216 Cal. 23, 26 [13 P.2d 513], it was held that in this state a joint tenancy deed between husband and wife creates no estate in entirety. (See, also, *Hannon* v. *Southern Pacific Co., supra,* p. 358.)

It is argued that, applying this ancient doctrine to the facts of the instant case, Frank Reina was, at all times, the owner of the entire estate; that the right was given to Lizzie Reina to convey away, by her voluntary act, an undivided one-half interest in it and thus remove it from the control of the other joint tenant; that since the husband was seized of the whole estate from the beginning, he had the right to undo the effect of the fraud perpetrated upon him, which destroyed a portion of *his* estate.

In support of the contention that the right to set aside instruments is not given solely to parties to the instrument,

plaintiff cites *Page* v. *Garver,* 146 Cal. 577, 579 [80 P. 860], where it was held that an heir, as distinguished from a personal representative, may sue to set aside a deed made by an ancestor during his lifetime. See, also, 12 C.J.S. 1016, 1017; and *Ingersoll* v. *Gourley,* 72 Wash. 462 [130 P. 743], where such right is given to creditors and to trustees.

Plaintiff makes no contention that he is appearing for or representing the heirs or the estate of the deceased wife. His contention is that as such joint tenant he is not a stranger to, but has an interest in, the subject matter of the suit and is entitled to relief by reason of the fraud and undue influence pleaded.

It seems logical that the very nature of the instrument creating the joint tenancy constitutes an arrangement between the parties that the property will be thus held subject to the right of either to voluntarily deed out his interest therein and thereby destroy the joint tenancy holding; that unless this transfer by one joint tenant was voluntary, the other joint tenant had such an interest in the whole that he may maintain an action for cancellation or rescission of a conveyance which was obtained by fraud and undue influence of another and that he would be prejudiced by such an involuntary conveyance. This same principle was applied in *Clay* v. *Hammond,* 199 Ill. 370 [65 N.E. 352, 93 Am.St.Rep. 146]; 9 C.J., p. 1224, note 70, where it was held that a deed executed by an insane person may be set aside by a vendee to whom such insane person conveyed the premises after his restoration to sanity. It has also been similarly held that where a deed is voidable on the ground of infancy of the grantor, one to whom the infant conveyed the property, after the infant reaches majority, may sue to set aside the prior conveyance. (*Breckenridge* v. *Ormsby,* 1 J.J. Marsh. (Ky.) 236 [19 Am.Dec. 71].)

Neither party has presented authority directly deciding this question. Our research met with the same result. In *Burton* v. *John Hancock Mutual Life Insurance Co.,* 171 Miss. 596 [157 So. 525, 158 So. 474], it was held that as to a tenancy in common there was no privity of estate but it was there said that this is not true as between joint tenants. Privies, as applied to the law, means ''Any of those persons having mutual or successive relationship to the same right of property.'' (Webster's Collegiate Dict. (5th ed.); *Werner* v. *Graham,* 181 Cal. 174 [183 P. 945]; *Richards* v. *Blaisdell,* 12 Cal.App. 101, 105 [106 P. 732].) As a general rule a party

to the contract or a privy thereto, and he alone, is entitled to maintain a suit to cancel or rescind it, and one who is a stranger to, or has no interest in, the subject matter of the suit is not ordinarily entitled to such relief, and where sufficient grounds exist for the rescission and cancellation of a conveyance, it may be set aside at the suit of those succeeding to the rights of the grantor. However, it has been definitely held that relief by way of cancellation of an instrument is not necessarily confined to a party to the instrument if his legal or equitable rights are affected thereby. (9 Am.Jur. § 9, p. 356; *Murray* v. *Murray*, 115 Cal. 266 [47 P. 37, 56 Am.St.Rep. 97, 37 L.R.A. 626] ; *International Realty Associates* v. *McAdoo*, 87 Fla. 1 [99 So. 117, 30 L.R.A. N.S. 194] ; *Bell* v. *Pleasant*, 145 Cal. 410 [78 P. 957, 104 Am.St.Rep. 61] ; *Cox* v. *Schnerr*, 172 Cal. 371 [156 P. 509].) We conclude that plaintiff was not a stranger to, but had such an interest in, the subject matter of the suit as would entitle him to institute this action.

Since the complaint stated a cause of action by plaintiff, the remaining question is whether the allegations conclusively show, as a matter of law, that the deceased, during her lifetime, ratified the grant deed of August 27, 1946, particularly as to the claimed acceptance of the quitclaim deeds from her three children.

Ratification is, generally, an affirmative defense. The defendant ordinarily bears the burden of proof with regard to affirmative defenses. It is true that plaintiff's complaint recites that after the discovery of the fraud Lizzie Reina demanded that the children reconvey the property to her and that quitclaim deeds were signed by three of them; that upon refusal of the other two she caused the action to be filed to ''set aside'' the deed of August 27, 1946, and clear her title.

By the answer herein, and as an affirmative defense, defendants alleged that in making the deed of gift of August 27th, Lizzie Reina was not acting under undue influence or fraud and that she intended to deed to her children, at that time, all property she held as joint tenant with her husband. These, of course, were factual questions to be determined by the trial court after hearing all the evidence. By the answer they admit that the three children subsequently executed quitclaim deeds and claim that since that time the estate of Lizzie Reina owned that three-fifths interest so quit-- claimed. The two daughters alleged the filing of the complaint against them by their mother, praying that the deed of

gift be adjudged void "as to said defendants only." They also alleged that that action was compelled by reason of threats of plaintiff against his wife. Then follows a claimed affirmative defense that plaintiff was *estopped* to assert that the estate of decedent should be deprived of the property acquired through the quitclaim deeds from the three children; and that the mother was not, at the time of her decease, a joint tenant of plaintiff.

As bearing on the question of intent of the deceased, at the time she executed the gift deed, defendants allege the execution by her, on the same day, of a will giving all her property to the five children in equal shares. Of course this will may be admissible as evidence contradicting plaintiff's allegations of fraud, but would not operate as an estoppel, as a matter of law, against plaintiff's claim. It is argued, however, in this connection, that since no appeal was taken from the order admitting the will to probate, and since the devisees thereunder are the five children mentioned, plaintiff is without right and should be estopped from bringing suit to cancel the gift deed because the will effects, through testamentary disposition, the same intent as is effected by the deed of gift. This last claim is not altogether true. If the original deed is sustained, and the two daughters retained their interest thereunder, they may, under the terms of the will, also share in the proceeds of the property returned to the mother by the other three children.

The serious question is the one relating to the claimed estoppel by reason of the apparent reliance on the original gift deed occasioned by the acceptance of the quitclaim deeds from the three children to their mother without any indication that the title to the property was to be restored to its former status in joint tenancy. It might be interpreted, according to defendants' claim, that the action instituted against the two daughters alone, without naming the other three children as defendants, was an endeavor to effect a partial rescission of the original gift deed and only as to those named defendants.

■ Defendants cite the general rule in reference to rescission of instruments, that one may not affirm in part and rescind in part. (*Buena Vista etc. Co.* v. *Tuohy,* 107 Cal. 243 [40 P. 386]; *Bettendorf* v. *Bettendorf,* 190 Iowa 83 [179 N.W. 444, 945]; 12 C.J.S. § 78b, p. 1080; 9 Am.Jur. § 67, p. 403; *Shields* v. *Barrow,* 17 How. (U.S.) 130 [15 L.Ed. 158].)

There are certain exceptions to this general rule, however, as where the instrument sought to be canceled is separable

or divisible and where the circumstances justify a rescission only as to particular matters or particular parties involved in an entire transaction. (*Hoffman* v. *Kirby*, 136 Cal. 26 [68 P. 321]; Civ. Code, § 3414; 12 C.J.S. § 78b, p. 1080; and *Smith* v. *Smith*, 289 Mo. 405 [233 S.W. 183].)

█ It appears to us, however, in the present action, that the question of estoppel or ratification of the gift deed by Lizzie Reina is a factual question rather than one of law. Plaintiff's complaint in the instant action alleges that the gift deed was fraudulently presented by Rose and Frances to their mother and her signature thereto was thus obtained; that the instrument did not convey any present interest in the properties because it was not intended that it be *delivered* at that time; that notwithstanding this intention of the grantor, Rose and Frances immediately recorded it; that upon discovery, the mother demanded a reconveyance; that immediately three of them quitclaimed any purported interest and action was immediately instituted against the other two to cancel the purported deed as to them.

"Delivery" is a word of well-defined meaning in law. The elements are that the writing must be meant by the maker to take immediate effect and be presumably or in fact, *accepted* by the other party. The delivery and acceptance are of necessity simultaneous and correlative acts. The law does not force a man to take title to real property against his will. (*Hibberd* v. *Smith*, 67 Cal. 547 [4 P. 473, 8 P. 46, 56 Am.St. Rep. 726].) Hence, the assent of the grantee is necessary in order to make a delivery effective and the deed operative as such. Under certain circumstances the recordation of a deed may be prima facie evidence or a presumption of its delivery or acceptance but this presumption is a disputable one. Under the pleadings the question of the delivery of the gift deed to any or all of the children was raised, and became a factual question, and opened the door to proof as to whether or not the three children, the defendants in this action who defaulted, ever had a part in obtaining the gift deed by fraudulent representations or otherwise; whether they ever knew of the existence of the deed or that the same was recorded at their instance or request or with their knowledge; and whether in fact or in law there was a delivery of the deed or acceptance of it by them.

In *Bank of Healdsburg* v. *Bailhache*, 65 Cal. 327 [4 P. 106], it was held that "A deed takes effect from its delivery, and if

delivery is wanting, it is void *ab initio.''* (Syllabus.) The same result would obtain as to the other two children if, by the evidence, plaintiff is successful in establishing fraud and lack of intent on the part of the mother to deliver the deed. The fact that the three children, upon notice by the mother of the fraudulent action of the other two children, immediately relinquished any claimed right to the property, strongly indicates a repudiation by them of the grant or its claimed delivery and acceptance by them. However, the trial court might be impressed with the idea that the mother ratified the claimed fraudulent deed and that these three children knowingly accepted the deed and quitclaimed the property back to her with the intent that she should hold it other than by joint tenancy deed. These are factual questions for the trial court to determine from the evidence produced but not from the pleadings alone. The action instituted by the mother against the two other children may also be considered as evidentiary support of either position but is not conclusive as a matter of law.

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 28, 1949. Traynor, J., voted for a hearing.