[Civ. No. 57585. Second Dist., Div. Five. July 10, 1980.]

R. E. SANDERS & COMPANY, INC., Plaintiff and Appellant, v. LINCOLN-RICHARDSON ENTERPRISES, INC., et al., Defendants and Respondents.

COUNSEL

Dunne, Gaston & Foster and Robert J. Jagiello for Plaintiff and Appellant.

Cox, Castle & Nicholson, George D. Calkins and Jerry M. Hill for Defendants and Respondents.

OPINION

THOMAS, J.*—Plaintiff appeals from an order granting the defendants' motion to quash service of summons on each of them made pursuant to Code of Civil Procedure section 418.10.

In the trial court plaintiff had the burden of establishing jurisdiction by a preponderance of the evidence upon defendants' motion to quash out-of-state service for lack of jurisdiction, and upon this appeal we are bound to view the facts most favorably to the defendants. (*Messerschmidt Development Co.* v. *Crutcher Resources Corp.* (1978) 84 Cal.App.3d 819, 825 [149 Cal.Rptr. 35].) Further, where, as here, the facts set out in affidavits and a declaration are widely at variance, "'. . .the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed.' [Citations.]" (*Wilson* v. *Eddy* (1969) 2 Cal.App.3d 613, 617-618 [82 Cal.Rptr. 826]; quoting *Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349]; *Messerschmidt Development Co.* v. *Crutcher Resources Corp., supra,* at p. 825; *Belmont Industries, Inc.* v. *Superior Court* (1973) 31

*Assigned by the Chairperson of the Judicial Council.

Cal.App.3d 281 [107 Cal.Rptr. 237].) Although the trial court made no express findings of fact upon the controverted facts "...it must be presumed that the trial court impliedly resolved such conflicts in defendants' favor." (*Wilson* v. *Eddy, supra*, p. 618.)[1] We summarize the evidence, applying those rules set out above to resolve controverted factual assertions.

Plaintiff is a California corporation with its headquarters in Los Angeles County and holds a real estate broker's license issued by the State of California. Plaintiff, whose president is R. E. Sanders, engages nationally in real estate marketing efforts for its clients and Sanders has traveled to various states in furtherance of those efforts.

Defendants Richardson and Lincoln are residents of Missouri and are the sole shareholders, officers and directors of defendant Lincoln-Richardson Enterprises, Inc. (Lincoln-Richardson), a Missouri corporation, and with the exception of a single additional shareholder, are the sole shareholders, officers and directors of defendant Health Facilities Management, Inc. (Health), which also is a Missouri corporation; that third shareholder also is a resident of Missouri. Richardson and Lincoln jointly own 13 nursing homes located in Kansas and Missouri which they have leased to Lincoln-Richardson which, in turn, has entered into a contract with Health for the latter's management of said homes. One of these is the Charleston Host House in Charleston, Missouri. Neither Richardson nor Lincoln have any property in California, neither aforesaid corporation is qualified to do business in California nor has it any property here.

Richardson and Lincoln also have an interest in a fast food restaurant chain in Arkansas. An associate of theirs in the fast food chain in

---

[1]Plaintiff asserts that we are bound to view the evidence in the light most favorable to it upon an order, as was this one, terminating the action prior to trial. Plaintiff cites in support of this *Raber* v. *Tumin* (1951) 36 Cal.2d 654 [226 P.2d 574] (appeal from a nonsuit), *Olivera* v. *Grace* (1942) 19 Cal.2d 570 [122 P.2d 564, 140 A.L.R. 1328] (appeal from a judgment after a special demurrer was sustained without leave to amend); *Seeger* v. *Odell* (1941) 18 Cal.2d 409 [115 P.2d 977, 136 A.L.R. 1291] (appeal from judgment on the pleadings), *Costa* v. *A.S. Upson Co.* (1963) 215 Cal.App.2d 185 [30 Cal.Rptr. 66] (appeal based on erroneous jury instructions); *Reina* v. *Erassarret* (1949) 90 Cal.App.2d 418 [203 P.2d 72, 7 A.L.R.2d 1309] (appeal from judgment on the pleadings). None of these are applicable. It is unfortunate that plaintiff's counsel did not avail itself of the number of authorities discussing burden of proof and treatment of controverted evidentiary matters on motions to quash and appeals from orders thereon, although we note that plaintiff cited in another context *Belmont Industries, Inc.* v. *Superior Court, supra*, which discusses these matters.

Arkansas is a Mr. Kosan of Dallas, Texas who is associated with the Bonanza restaurants, a multistate chain. None of the defendants' restaurants in Arkansas do any business in California or have other connection with it.

In 1978 Richardson and Lincoln wished to open a Bonanza restaurant in Jefferson City, Missouri and desired to interest investors in it. Mr. Kosan suggested that they contact plaintiff inasmuch as Sanders had been used by Bonanza to secure investors in many of its restaurants located nationwide. Richardson from his home in Missouri telephoned Sanders to arrange a meeting. Thereafter on October 13, 1978, the two met at the St. Louis airport; during the meeting Sanders informed Richardson that he had come from an investors' meeting in Illinois and would "catch a flight" to either Washington, D.C. or New York in connection with his real estate business. After discussing the restaurant the parties' conversation turned to the defendants' desire to sell the Charleston Host House property; Richardson explained the defendants' wish that Lincoln-Richardson take back a lease from the buyer and that Health then manage the business. Sanders stated that he had potential investors across the nation who might be interested in both the Bonanza deal and the Charleston Host House sale and leaseback. While still in the meeting at the airport, Sanders handed to Richardson a sales agency agreement concerning Charleston Host House which Richardson took with him; he and Lincoln executed the agreement in Missouri on or about October 16, 1978 and forwarded it by mail to the plaintiff's California office where Sanders executed it for plaintiff on October 31, 1978.[2]

Sanders busied himself in an effort to find a buyer for Charleston Host House. He contacted by telephone approximately 300 potential investors in California and placed an advertisement in the western edition of the Wall Street Journal; however, Sanders did not report any of his sales efforts to defendants except those three offers discussed below.

Plaintiff then procured three written offers to purchase the Charleston Host House. All the offers came in response to Sanders' solicitation

---

[2]The sales agency agreement is a printed form with spaces provided where specific information may be inserted. Defendants' affidavits do not say whether the spaces in the agreement were completed when delivered to Richardson at the airport; Sanders asserts in his affidavit that he did not deliver the agreement to Richardson until after he returned to California, from where he mailed it. However, the place and manner of delivery is not important to our analysis of the transaction.

in California. After a telephone conversation with Richardson, Sanders forwarded the offers to defendants. Sanders and Richardson then had one or more telephone conversations after which Lincoln telephoned an agent of plaintiff to learn to whom defendants might return the offers after which Richardson returned them by mail. Sanders then resubmitted the offers by again mailing them to defendants after which Lincoln wrote a letter to Sanders detailing the defendants' reasons for rejecting one of the offers. Richardson later talked to Sanders by telephone in which he explained that Lincoln's earlier letter had not constituted a counteroffer. Richardson recalls that, in all, he and Sanders had "four or five" telephone conversations after their airport meeting. All defendants were located in Missouri during all conversations with plaintiff's representatives. None of the defendants had any direct contact with any of the three offerors.

Accepting that version of the evidence which we do,[3] it is obvious that defendants' contacts with the State of California fell far short of those necessary to invest a court in this state with jurisdiction over the defendants.

The bases upon which California courts, under authority of Code of Civil Procedure section 410.10, may reach out to assert personal jurisdiction over nonresidents who are served with process outside our borders recently has been expounded by the California Supreme Court in *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143 [127 Cal.Rptr. 352, 545 P.2d 264] and *Sibley* v. *Superior Court* (1976) 16 Cal.3d 442 [128 Cal.Rptr. 34, 546 P.2d 322], and need not be repeated here. It is sufficient presently to note again that when: "...the defendant's activities in the forum are not so pervasive as to justify the exercise of general jurisdiction over him, then jurisdiction depends upon the quality and nature of his activity in the forum in relation to the particular cause of action. In such a situation, the cause of action must arise out of an act done or transaction consummated in the forum, or defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." (*Cornelison* v. *Chaney, supra,* pp. 147-148.)

The defendants' activities in California obviously were not so per-

---

[3]Plaintiff suffers a considerable body blow from the court's acceptance of the evidence as recited above; plaintiff has premised significant portions of its argument on facts advanced by it in the trial court but which were specifically controverted by defendants. Thus, much of what plaintiff now argues is irrelevant.

vasive as to justify the exercise of general jurisdiction over them. We determine further that the defendants' activities in attempting to sell the Charleston Host House were not of the quality or nature sufficient for a California court to exercise personal jurisdiction over them. Defendants' intrusions into this state were few in number, consisting only of two letters and six or seven telephone calls to plaintiff's agents. The quality of these was insubstantial; none dealt with formation of the terms of the agency relationship or with directions of plaintiff's activities. Instead, the contacts (except for two or three whose content was not put into evidence) merely were to arrange a meeting in St. Louis and to discuss the inadequacies of the offers which plaintiff had procured. Concededly, jurisdiction of the California court may be activated upon only one contact with the state (*McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199], but here the defendants' contacts with California were only incidental to plaintiff's nationwide effort to sell the Missouri real property.

■ That Sanders was in California when he received the communications was of no significance. In *Floyd J. Harkness Co.* v. *Amezcua* (1976) 60 Cal.App.3d 687, 691 [131 Cal.Rptr. 667], the court considered whether a nonresident defendant's having executed a promissory note payable in California to a resident and having engaged in interstate telephone calls to California relative to the contract which was to be performed outside the state, were sufficient to establish our court's jurisdiction over the nonresident, and in denying jurisdiction said: "...it is evident that the effect of these activities in California is too attenuated to use them as a basis for establishing jurisdiction in our courts. To predicate jurisdiction on contacts as tenuous as those here would not only offend traditional notions of fair play and substantial justice but would be unreasonable." In *Belmont Industries, Inc.* v. *Superior Court, supra*, 31 Cal.App.3d at page 284, the mailing of construction plans followed by the mailing of a written "purchase order" for work in eastern United States from a foreign corporation to a California resident corporation, was an insufficient activity to establish jurisdiction over the foreign corporation.[4]

---

[4]In *Belmont Industries, Inc.* v. *Superior Court, supra*, the foreign corporation's above described activities were in addition to its contracts with other California drafting firms for work in connection with other jobs on the east coast. Thus, in *Belmont* the foreign corporation had considerably more contacts with California than did these defendants.

That the last act in the formation of the sales agency agreement—plaintiff's signature—was performed in California is of no significance; although concededly last in the series of acts, plaintiff's execution of its acceptance of the agreement was of relatively little importance, for the substance of the relationship was formed in Missouri when Richardson and Sanders discussed its formation and terms. At least within this factual context, "...formalities of contract execution are not determinative for purposes of jurisdiction." (*Lakeside Bridge & Steel* v. *Mountain State Const.* (7th Cir. 1979) 597 F.2d 596, 604.)

Plaintiff relies primarily on *Ault* v. *Dinner for Two, Inc.* (1972) 27 Cal.App.3d 145 [103 Cal.Rptr. 572], to illustrate "[t]he truly minimal nature of the contact required before the Courts of this state will exercise jurisdiction over nonresident defendants...." There a nonresident defendant published and sold books of tickets enabling each purchaser to obtain dinners at a discount in participating restaurants. Plaintiff contacted defendant and the two entered into a contract under which plaintiff was employed as defendant's exclusive California representative to represent defendant and solicit business for it in California. Defendant had no prior California representation and had conducted no business in California. Orders which plaintiff obtained, together with information concerning the restaurant involved, were to be forwarded by plaintiff to defendant in New Jersey which, if it decided to accept the order, was to mail a confirmation of acceptance directly to the restaurant. However, after plaintiff had solicited certain orders and defendant had mailed some confirmations to restaurants, disagreements developed between plaintiff and defendant and their relationship terminated. No orders were completed and defendant canceled all orders which it had accepted earlier. From these recited facts, the court found sufficient contacts of *Dinner for Two* within California to subject it to the jurisdiction of the California courts, resting its ruling on the fact that "...the contract under consideration was to be performed in California.... Moreover, the corporation had direct contact with several of these [restaurant] owners—...." (*Id.*, at p. 151.)

We recognize that where a nonresident creates an agency in the state, as in *Ault* v. *Dinner for Two, Inc., supra*, the facts may indicate that he intended to cause such an effect in California that a court of this state may exercise personal jurisdiction over him. However, these facts do not support that proposition. Conceding that defendants could have expected, and perhaps did, expect that plaintiff would solicit here as well as elsewhere, it would be unreasonable to exercise jurisdiction

on that expectation which merely included California in a national marketing effort. (*Sibley* v. *Superior Court, supra*, 16 Cal.3d at p. 447.) The effect of plaintiff's having contacted 300 California residents (and we have no evidence of the nonresidents, if any, plaintiff contacted) cannot be imputed to defendants in absence of their knowledge thereof, nor can jurisdiction over defendants be based on plaintiff's unrevealed activities here. (See *Hanson* v. *Denckla* (1958) 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1297, 78 S.Ct. 1228]; *Regents of University of New Mexico* v. *Superior Court* (1975) 52 Cal.App.3d 964, 971 [125 Cal.Rptr. 413].)

We affirm the order of the trial court which granted the defendants' motion to quash service of the summons and complaint.

Kaus, P. J., and Stephens, J., concurred.