[No. 12311–8–II.   Division Two.   August 27, 1990.]

JACQUELINE L. GOTTWIG, ET AL, *Appellants,* v. BETTY
J. BLAINE, *Respondent.*

*Shawn A. Flood* and *Vandeberg & Johnson,* for appellants.

*Thomas L. Palotas* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for respondent.

PETRICH, A.C.J.—Jacqueline Gottwig and Connie Rosenau, the beneficiaries of their deceased mother, Vida Reynolds, filed a lawsuit to partition property owned by

Reynolds and Betty Blaine. Blaine counterclaimed, seeking to quiet title in the property in herself. Blaine contended that she and Reynolds held the property as joint tenants, with a right of survivorship; that she was the surviving joint tenant; and that Reynolds' lack of capacity, and the undue influence of Gottwig and Rosenau, invalidated Reynolds' quitclaim deed to her daughters which, if effective, would sever the joint tenancy. The trial court quieted title in Blaine.

Gottwig and Rosenau appeal, contending that Blaine lacked standing to challenge the deed and was precluded from pursuing her action by the nonclaim statute; that the court improperly excluded evidence under the deadman's statute; that the evidence does not support a finding of Reynolds' lack of capacity or that she was suffering from undue influence; and that the court improperly shifted the burden of showing that Reynolds did not act under undue influence. We affirm.

In 1967, after each had consulted with her lawyer, Reynolds and Blaine contracted for the purchase of property on Fox Island. The real estate contract provided that they purchased as joint tenants with a right of survivorship.

In 1968, Blaine and Reynolds constructed a cabin on the Fox Island property. They shared equally the cost of the improvement, and lived in the cabin from 1969 until Reynolds' death in 1983.

Blaine, in her will dated 1978, and Reynolds, in a codicil to her 1976 will, reaffirmed that they owned the Fox Island property as joint tenants with a right of survivorship. In the codicil to her 1976 will, Reynolds appointed Blaine personal representative. In 1978, Reynolds and Blaine also recorded the deed for the Fox Island property. The deed conveyed the property to Blaine and Reynolds as "joint tenants with the rights of survivorship, but not as tenants in common."

In 1981 Gottwig and her son, Richard Peterson, were looking through Reynolds' papers when they discovered the codicil to Reynolds' will, which stated that Reynolds and Blaine held the Fox Island property as joint tenants with a

right of survivorship. Gottwig and Rosenau were astonished and upset to learn that, upon Reynolds' death, they would not receive her share of the property. Gottwig and her son researched the matter and prepared a quitclaim deed,[1] which conveyed Reynolds' share of the Fox Island property to Gottwig and Rosenau, and a new will, which named Gottwig as executrix.

In February 1982, Peterson drove Reynolds to Gottwig's place of work and Reynolds signed the deed and will. No one explained the documents to Reynolds, or asked if she understood what she was signing. Ms. Robertson, who worked with Gottwig, notarized the deeds after Reynolds read and signed them. Peterson and Ms. Robertson also witnessed the new will. Rosenau and Gottwig kept the will a secret until after Reynolds' death. They did not record the deeds until March 31, 1983, 2 days before Reynolds' death.

In April 1982, Reynolds injured her hip and was hospitalized. In June 1982, she was again hospitalized for chest pain when her doctor noted that she was quite confused. The following month, Dr. Gary, a neurosurgeon, made a diagnosis that she suffered from Alzheimer's disease. Rosenau and Gottwig acknowledged that their mother was incapable of handling her affairs in the summer of 1982 and had themselves appointed as guardians of their mother. Reynolds was again hospitalized in February 1983, suffering severe Alzheimer's disease, and readmitted the following March; she died on April 2, 1983.

Gottwig and Rosenau contend, first, that Blaine does not have standing to challenge the conveyance of the property. They urge that she does not have a property interest sufficient to confer standing because: Reynolds had the right to transfer her interest in the property; Blaine enjoyed only

---

[1]Gottwig and Richard Peterson prepared a second quitclaim deed for some property in Arizona that Blaine and Reynolds also held as joint tenants. Reynolds signed the second quitclaim deed. Gottwig and Rosenau included the Arizona property in their suit to partition, but the court granted Blaine's motion to dismiss the Arizona partition claim and that order has not been appealed.

the possibility of a right of survivorship; and because, when Reynolds conveyed her interest, she extinguished the right of survivorship and destroyed the only interest that would give Blaine standing to challenge the conveyance. We disagree.

Joint tenancy is one of two major forms of co–ownership in property, the other being tenancy in common. *Lyon v. Lyon,* 100 Wn.2d 409, 411, 670 P.2d 272 (1983). The major characteristic of joint tenancy is the right of survivorship, pursuant to which, when one of the joint tenants dies, the surviving joint tenant takes entire ownership and sole title to the whole estate. *Lyon v. Lyon, supra;* C. Moynihan, *Real Property* 220 (1962). A joint tenant may freely alienate his interest in jointly held property, and conveyance by a joint tenant severs the joint tenancy and extinguishes the right of survivorship.

Washington courts have not yet addressed whether termination of the joint tenancy precludes the surviving cotenant from challenging the validity of the instrument that conveyed away the deceased cotenant's one–half interest in the property. The court in *Reina v. Erassarret,* 90 Cal. App. 2d 418, 203 P.2d 72, 75 (1949), held that a surviving joint tenant may maintain a suit to set aside a conveyance obtained from his deceased cotenant by fraud or undue influence. *Reina v. Erassarret, supra* at 423–24. In *Reina,* a husband and wife owned property as joint tenants. While the wife was feeble and mentally weak, the couple's children obtained from her a deed that conveyed the wife's one–half interest in the jointly owned property to the children. After the wife died, her husband and surviving cotenant sued to set aside the conveyance because it was procured by fraud and undue duress. The court held that:

> It seems logical that the very nature of the instrument creating the joint tenancy constitutes an arrangement between the parties that the property will be . . . held subject to the right of either to voluntarily deed out his interest . . . and . . . destroy the joint tenancy . . . unless this transfer by one joint

tenant was voluntary, the other joint tenant had such an interest in the whole that he may maintain an action for cancellation or rescission of a conveyance which was obtained by fraud and undue influence of another and that he would be prejudiced by such an involuntary conveyance.

*Reina,* at 423. *See also In re Estate of Casella,* 256 Cal. App. 2d 312, 64 Cal. Rptr. 259, 265 (1967) (where one joint tenant has been induced fraudulently to convey his interest in the joint tenancy to his co–joint tenant, such an act does not destroy the joint tenancy unities; the status of the title remains as it was before the execution of the deed–joint tenancy); *Gillette v. Nicolls,* 121 Cal. App. 2d 185, 262 P.2d 856, 858 (1953) (surviving joint tenant may maintain an action to set aside a conveyance obtained from her deceased cotenant by fraud and undue influence). We find the reasoning and principles applied by the *Reina* court persuasive. We conclude that a surviving joint tenant possesses a property interest in the whole sufficient to maintain an action to set aside a conveyance obtained from her deceased cotenant through fraud, undue influence, or lack of capacity.

*Cozad v. Roman,* 570 S.W.2d 558 (Tex. Civ. App. 1978), upon which Gottwig and Rosenau rely, does not compel a different result. In *Cozad,* a mother and daughter owned property as joint tenants. The mother executed a sales contract that conveyed her undivided one–half interest in the land to a third party. The daughter sued to set aside the transaction, based on undue influence of the purchaser. *Cozad,* 570 S.W.2d at 560.

The court held that the daughter did not have standing to challenge the sale, because her mother, the cotenant, was still alive at the time the daughter sued to set aside the transaction. The *Cozad* court distinguished its case from *Reina* and *Gillette,* because "[t]he grantor–joint–tenant in those cases was deceased at the time of the action. Thus, the joint–tenant enjoyed the possibility of recovering the deceased co–tenant's interest as a survivor of the joint–tenancy." *Cozad,* 570 S.W.2d at 561. It reasoned that no

such interest existed where the conveying cotenant was still alive, because if one joint tenant established her cotenant's incompetence and the transaction was set aside, the joint tenant would receive nothing; any property interest would be restored to the still living cotenant, subject to future transfer by that cotenant. The *Cozad* case is factually and legally distinguishable from the instant case.

■ Gottwig and Rosenau next contend that if Blaine has standing, she did not file a creditor's claim against the estate within 4 months after Reynolds' will was admitted to probate, as required by RCW 11.40.010, and, therefore, cannot challenge the validity of the quitclaim deed. Former RCW 11.40.010 (Laws of 1974, 1st Ex. Sess., ch. 117, § 33) provides that a personal representative, upon appointment, shall publish "a notice to the creditors of the deceased, requiring all persons having claims against the deceased to serve the same on the personal representative or his attorney of record, and file an executed copy with the clerk of the court" within 4 months after the representative publishes the notice to creditors or files a copy of the notice to creditors with the court. The 4–month claim period is mandatory and compliance with its terms essential to recovery; a creditor's claim not filed within the period "shall be forever barred". *Turner v. Estate of Lo Shee Pang,* 29 Wn. App. 961, 963, 631 P.2d 1010 (1981). Blaine, however, claims sole ownership as a joint tenant, not as a creditor. Further, the interest of a deceased joint tenant does not pass under his will. *Lyon v. Lyon,* 100 Wn.2d at 411; C. Moynihan, *Real Property* 220 (1962). RCW 11.40, which governs claims of creditors against the estate, does not bar Blaine's claim.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder

shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Affirmed.

WORSWICK, J., and PETRIE, J. Pro Tem., concur.