Filed 8/25/22  Lee v. An CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| CONNIE E. LEE et al., | B306023 |
| Plaintiffs and Respondents, | |
| v. | (Los Angeles County Super. Ct. No. BC665476) |
| MYUNG SON AN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher K. Lui, Judge.  Affirmed.

Lagasse Branch Bell + Kinkead, and Christopher C. Cianci, for Plaintiffs and Respondents.

Law Offices of Jaenam Coe, Jaenam Coe; Kasai Law Group, Wayne T. Kasai and Kristin E. Reynolds for Defendant and Appellant.

_____

## INTRODUCTION

We are called upon to decide whether fewer than all of a decedent's heirs have standing to seek, pursuant to section 3412 of the Civil Code, cancellation of a real property deed made by the decedent prior to his death. Based on the arguments and authorities presented to us, we conclude that they do. We further conclude that substantial evidence supports the trial court's determination that the deed at issue was procured by undue influence, thus warranting cancellation. We therefore affirm the trial court's judgment.

## BACKGROUND

### I.    Factual Background[1]

When Pok S. Pak (Pak) died in 2017,[2] he was survived by four adult children. Plaintiffs are three of those children. The fourth is not a participant in these proceedings. Pak's children all share the same mother, to whom Pak was married until her death in 1991.

---

[1]    Because the facts relevant to An's appeal are narrow and undisputed, we rely primarily on the trial court's recitation of the facts in its statement of decision. (*Granowitz v. Redlands Unified School Dist.* (2003) 105 Cal.App.4th 349, 352 [relying on statement of decision where facts are undisputed].) In considering whether substantial evidence supports the judgment, we recite record facts in the light most favorable to the Plaintiffs as respondents. (*Williamson v. Brooks* (2017) 7 Cal.App.5th 1294, 1299.)

[2]    The parties do not specify Pak's exact age at death, but one of his daughters, who was born in or about 1964, described him as being "of old age."

Pak and his wife bought property in Downey, improved by a house, in 1980. They raised their children there and lived there together until the time of the wife's death. Sometime after his wife's death, title to the property was changed to reflect Pak's sole ownership. Pak continued to occupy the house until the time of his death.

Defendant Myung Son An is the daughter of Kyung Ja Um. Pak and Um were romantic partners who began cohabitating in the Downey house in 1999 but were never legally married. Notwithstanding An's references to Pak as "father" and "dad" at trial, Pak was not An's father. Pak and Um's relationship eventually soured and Pak "kicked [Um] out" of the house in April of 2017, about a month before his death.

Pak did not like An. This is because, as one Plaintiff testified, Pak thought An mistreated her mother. Inexplicably, Pak nonetheless hired An as his In-Home Supportive Services (IHSS) provider in 2012, and later hired An's husband for the same role in 2017. However, the record does not establish that Pak had much say in the matter. Though An testified that Pak "wanted [them] to do it," An and her husband were the ones that registered Pak for IHSS. Once registered, An provided no services to Pak, despite receiving government payments to do so. An never told Plaintiffs she or her husband were Pak's caregiver and Plaintiffs saw no evidence that Pak was ever receiving in-home care from anyone but Plaintiffs. Indeed, whenever Plaintiffs visited, they found the house dirty and had to clean it.

The trial court found that An's "IHSS caregiver role was undertaken on a pretextual basis to ingratiate herself with [Pak] and to gain additional influence over his affairs." Most

significantly for our purposes, An used this influence to cause Pak to transfer legal title of the Downey property to her.

In October 2016, An had an escrow company prepare a quitclaim deed granting her the Downey property and drove Pak to a notary where he signed the document.  Despite Pak being able to read only Korean, the deed was in English and An did not prepare a Korean translation.  Despite the property having considerable equity value, An gave Pak nothing in exchange for it.  Despite the significance of the transaction, An could not recall having discussed it with Um beforehand and never told Plaintiffs about it.  Plaintiffs learned about the deed three days after Pak's death when An changed the locks on the house and a helpful tenant, who happened to have some legal experience, ran a title search.

About two weeks after Pak's death, An listed the property for sale through a real estate agent.  In response, Plaintiffs recorded a lis pendens.  The property was thereafter delisted.

## II.  Procedural Background

Plaintiffs' verified complaint contained four counts: (1) declaratory relief; (2) cancellation of instruments; (3) quiet title; and (4) preliminary and permanent injunction.  By the declaratory relief count, Plaintiffs sought a declaration that the deed to An was void or voidable and that title to the house should be with Plaintiffs as joint tenants.  By the cancellation of instruments count, they sought cancellation of the deed pursuant to Civil Code section 3412.  By the quiet title count, they sought a declaration that title to the house was jointly held by Plaintiffs to the exclusion of any interest of An.  By the injunction count Plaintiffs sought to prevent An from interfering with their rights to the house.

4

Immediately before trial, An's counsel orally raised two issues he contended entitled An to judgment. First, he argued that Plaintiffs should have commenced a probate action and then brought their complaint on behalf of Pak's estate. Second, he claimed that the absence of Plaintiffs' other sibling, Pak's fourth child, rendered relief impossible. He noted that Civil Procedure Code section 762.060, which applies to quiet title actions, requires all known holders of adverse interests to be named as defendants and that granting the relief would serve to deprive the absent sibling of his interest in the house. He did not raise standing under Code of Civil Procedure section 377.11. Plaintiffs' counsel responded that none of An's arguments affected the cancellation count and conceded that, if the deed was cancelled, further proceedings in probate would be appropriate.

After a bench trial, the trial court entered judgment for Plaintiffs on their cancellation count and for An on the other three counts and issued a written statement of decision explaining its ruling. We are directed to no specific resolution in the record of An's pretrial oral objections but the statement of decision reflects that the trial court considered them in rendering judgment.

As to Plaintiffs' cancellation count, the trial court found that the deed was procured through An's undue influence. It found that An had entered into a confidential relationship with Pak by becoming his IHSS caregiver and that she had exploited that relationship by secretly undertaking to cause Pak to transfer the house to her.

As to Plaintiffs' declaratory judgment count, the trial court stated that the request was inappropriate given the absence of the fourth sibling: "a declaration resting title in Plaintiffs as

5

joint tenants . . . would be substantively inappropriate. The evidence at trial indicated that the fourth child of [Pak] is alive, apparently lacks capacity to participate in the litigation, and is not represented in this case by a guardian ad litem. A declaratory judgment that excluded Plaintiffs' remaining sibling would be inequitable."

As to quiet title, the trial court concluded that Plaintiffs had alleged only an equitable interest and not a legal interest in the property. As such, their claim against An, the holder of the legal interest, failed as a matter of law. (Citing *Stafford v. Ballinger* (1962) 199 Cal.App.2d 289, 294–295.)

Finally, the trial court declined to issue any injunction protecting Plaintiffs' claimed ownership in the house because it had declined to award Plaintiffs legal title to the house: "legal title to the Subject Property is uncertain and will likely require further proceeding in Probate Court. Under such circumstances, it would be inappropriate for the Court to issue injunctive relief in favor of plaintiffs." An appealed.[3]

---

[3] We note that An's statement of appealability, required by rule 8.204(a)(2)(B), is wanting. She recites only that "[t]his is an appeal of a judgment entered in the Superior Court for the County of Los Angeles on February 26, 2020" and that "Code of Civil Procedure section 904.1 authorizes this appeal." An filed her notice of appeal on May 18, 2020, 80 days after service of the notice of entry of judgment. Under rule 8.104(a)(1)(A), an appellant ordinarily must file its notice of appeal within 60 days after service of the notice of entry of judgment. This time may be extended where, as we glean from the record occurred here, the appellant files and serves a valid notice of intention to move for a new trial. (Cal. Rules Ct., rule 8.108(b).) As timeliness is

## DISCUSSION

The parties' briefing in this appeal is lacking in many respects, adding needless difficulty to our review. An's opening brief raises only one issue: whether Plaintiffs had standing to pursue the cancellation cause of action where they comprised less than all of Pak's surviving children. Plaintiffs' responding brief calls this issue a "red herring," gives it correspondingly limited attention, and then launches into a full-throated argument that substantial evidence supports the trial court's determination that the deed was void or voidable, even though An never argued otherwise in her opening brief. In reply, An claims Plaintiffs "concede[d]" the trial court was wrong in allowing them to prosecute the cancellation claim given defects in standing, and then proceeds to argue the merits of the judgment on various new grounds. She only obliquely responds to Plaintiffs' substantial evidence arguments.[4]

In short, the parties largely talk past one another in their briefs and fail to confine themselves to the issues raised in the opening brief in accordance with regular appellate practice. This leaves us to sort out those issues appropriate for our consideration and determine them without the benefit of robust rebuttal in the parties' briefing.

---

essential to our appellate jurisdiction, An should have demonstrated the timeliness of her appeal as part of her statement of appealability rather than leaving it to the court to figure out from the record.

[4] Indeed, An's reply brief does not so much as mention the "substantial evidence" standard of review.

7

# I.    Issues Subject to Review

We ordinarily review only those issues raised by the appellant in its opening brief.  (*Foxen v. Carpenter* (2016) 6 Cal.App.5th 284, 293 [review ordinarily limited to issues which have been adequately raised and supported in the appellant's opening brief].)  We have discretion to consider issues raised in the reply brief that do no more than "elaborate on issues raised in the opening brief or rebut arguments made by the respondent in respondent's brief."  (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 276 (*American Indian*).)

Here, we will consider only (i) the standing issue raised in An's opening brief; and (ii) the sufficiency of evidence argued in Plaintiffs' responding brief, because some of An's reply arguments may be characterized as responsive to Plaintiffs' arguments.  As to An's other arguments raised for the first time in her reply brief, we decline to consider them.  (*American Indian*, *supra*, 227 Cal.App.4th at p. 276.)  Specifically, we do not consider An's arguments that the trial court needed to establish what Pak's intent was or would have been but for An's undue influence, or that the court overlooked evidentiary presumptions mandated by the Evidence Code.  These are issues that An did not raise in her opening brief and that Plaintiffs did not address in their respondents' brief.

An implies, without citation, that we should consider these arguments under the issue elaboration exception noted in *American Indian*.  She claims that her standing argument in her opening brief "also brings forth the logical flaw in the trial court's ruling that are irreconcilable regarding the true testamentary intent of the grantor, the decedent, as the claim that the deed

8

was presumably executed against his will is being made by third parties." [*Sic*.]  We disagree that An's standing issue in her opening brief somehow embraces her reply argument that the trial court needed to, but could not find, Pak's true intent with respect to the transfer of his property.  An's reply argument is a merits argument wholly separate from the narrow question of standing.

Though An does not contend otherwise, we also find that her new reply arguments are not responsive to Plaintiffs' merits arguments in their responding brief.  Plaintiffs' merits arguments are limited to marshalling evidence that supports a finding of undue influence as sufficient to render the deed voidable, justifying its cancellation.  Plaintiffs did not undertake to demonstrate substantial evidence of Pak's actual intent with respect to the deed, or what that intent would have been but for An's influence.  They had no reason to as An's legal argument that such evidence was necessary to support a finding of undue influence was not made in her opening brief.

Moreover, An fails to provide any cogent argument or authority—whether under the common law, Civil Code section 1575, Welfare and Institutions Code section 15610.70, or otherwise—that a plaintiff must prove what an inter vivos grantor's intent would have been but for the undue influence.[5]

---

[5]     An says only, without citation to authority, that "[t]he determination of undue influence necessarily includes a premise[] that the deceased did not intend to, or would not have wanted to sign the deed but for the undue influence."  Be that as it may, statutory articulations of undue influence do not require a plaintiff to show prior intent contrary to that manifested in the

9

Thus, not only is the argument untimely raised but it is insufficiently raised. "We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.'" (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 (*Malibu Hillbillies*).)

An's related reply arguments about presumptions under the Evidence Code are likewise new, such that considering them would unfairly deprive Plaintiffs of the opportunity to raise opposing arguments. (*Malibu Hillbillies*, *supra*, 36 Cal.App.5th at p. 153.)

## II. The Trial Court's Undue Influence Finding Was Supported by Substantial Evidence

Under the same heading as her intent and Evidence Code arguments, An argues that "[t]he reasons as cited by the trial court as the basis for finding undue influence are also insufficient and inadequate to find that the trial court exercised its reasonable discretions." We interpret this as a response to Plaintiffs' substantial evidence argument, exercise our discretion to consider it, and reject it.

---

subject act; they require only evidence from which the factfinder could conclude that the act was a result of overreach on the part of the defendant sufficient to create the inference that the act was not a product of free will. (See, e.g., Civil Code, § 1575 [no reference to prior intent]; Welf. & Inst. Code, § 15610.70, subd. (a)(4) ["Evidence of the equity of the result *may* include, but is not limited to . . . any divergence from the victim's prior intent . . . ."] [italics added].)

10

In reviewing a finding of undue influence, we consider "whether from the totality of the facts and circumstances, the . . . finding . . . is supported by substantial evidence." (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1033 (*Gomez*).)  In conducting our review, we do not review individual pieces of evidence discussed by the trial court in isolation and we do not reweigh the evidence.  (*Id.* at pp. 1027, 1033.)  Where, as here, a statement of decision sets forth the basis for the decision, " ' " 'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.' " ' " (*Id.* at p. 1027.)

Despite claiming that the trial court improperly found undue influence, An does not articulate or propose a standard for undue influence.  She asserts that "Welfare and Institutions Code Section 15610.70 [w]as the basis for [the court's] ruling," but this is incorrect.[6]  The trial court found that An's conduct amounted to undue influence under a common law analysis, but, because An objected to the trial court's proposed statement of decision for failure to apply section 15610.70, the trial court conducted a

---

[6]     An also pleads confusion about how the undue influence resulted in the cancellation of her deed.  She says "[t]he original complaint invokes Civil Code § 3412 as its basis for seeking the relief under the second cause to cancel the deed.  However, the decision states that the deed should be cancelled because it was obtained by fraud, duress and undue influence . . . ."  Civil Code section 3412 allows for the cancellation of instruments that are "void or voidable."  Deeds procured by undue influence are voidable.  (*Fallon v. Triangle Management Services, Inc.* (1985) 169 Cal.App.3d 1103, 1106.)  The trial court found that the deed from Pak to An was procured through undue influence.

11

section 15610.70 analysis in the alternative.  It found undue influence under that standard as well.  Because An urged application of section 15610.70 in the trial court, we consider whether substantial evidence supports the trial court's conclusion that it was satisfied.  It does.

Welfare and Institutions Code section 15610.70, subdivision (a), defines undue influence as "excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity." It directs that, in determining whether a result was produced by undue influence, each of the following categories be considered: "(1) The vulnerability of the victim. . . . [¶] (2) The influencer's apparent authority. . . . [¶] (3) The actions or tactics used by the influencer. . . . [¶] (4) The equity of the result. . . ." (*Ibid*.)  As to each category, the statute lists non-exclusive examples of evidence that may be considered.

Here, substantial evidence exists with respect to each category.  First, there was ample evidence of Pak's vulnerability and that An knew of it.  (See Welf. & Inst. Code, § 15610.70, subd. (a)(1).)  An registered Pak in IHSS, which implies a need for caretaking services (even though An failed to provide them). Pak also lacked command of the English language and the capacity to understand legal documents.  Moreover, Pak's son testified that Pak's mental capacity had declined in old age.[7]

---

[7]     We decline to consider An's untimely assertion, made for the first time on reply, that Plaintiffs needed an expert to establish Pak's mental capacity at the time he signed the deed.

12

Second, there was ample evidence of An's apparent authority. She had variously been Pak's caretaker, the spouse of Pak's caretaker, and presented herself as a family member at trial. (See Welf. & Inst. Code, § 15610.70, subd. (a)(2).) Her testimony also revealed unusual involvement in Pak's finances, including that An directed statements for a loan taken out in Pak's name to be mailed to her home address.

Third, An's tactics in dealing with Pak included "[i]nitiation of changes in personal or property rights," including registering Pak for IHSS and causing him to transfer his house to her. (Welf. & Inst. Code, § 15610.70, subd. (a)(3)(C).) An also used "secrecy in effecting those changes" (*ibid.*)—she never told Plaintiffs, who were Pak's children, that she had engaged in either of these actions.

Finally, there is clear inequity in the result. An caused Pak to transfer the valuable house to her for no consideration. (See Welf. & Inst. Code, § 15610.70, subd. (a)(4).) She argues that there could have been valid reasons for him to do so, but this is nothing more than a request that we reweigh the evidence. We further note An's assertion that Pak might have wanted to give the house to her as a gift in appreciation of her "in home care" is contrary to the court's findings. The court found she did not provide him any care (although she received government payments to provide it). Certainly, then, the value of An's non-existent services was disproportionately small compared to the value of the house. (See *ibid.*)

These record facts constitute substantial evidence of inequity. An argues that the trial court improperly relied on evidence of a prior expression of intent, but this would not change the analysis. As noted above, in reviewing a trial court's findings

of undue influence, we consider the totality of the circumstances and not individual pieces of evidence discussed by the trial court in isolation.  (*Gomez*, *supra*, 54 Cal.App.5th at p. 1033.)  On the record here, such review permits no finding of error in the trial court's conclusion that An exerted undue influence over Pak in causing him to deed his house to her.

## III.  Standing

The parties' arguments about standing are disjointed and conclusory.  As best as we can tell, they address two grounds for standing.  The first is whether Plaintiffs had standing under Code of Civil Procedure section 377.11 to prosecute the Civil Code section 3412 cancellation claim on Pak's behalf as the statutorily defined "decedent's successor in interest."  The second is whether Plaintiffs had an interest in the property sufficient to prosecute the cancellation claim in their own right.  As it appears the second ground is the one the trial court relied on in proceeding to judgment (An never raised the first), we begin there and conclude that Plaintiffs had standing.  Accordingly, we need not consider standing under Code of Civil Procedure section 377.11 and related sections.

Civil Code section 3412 provides:  "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

An argues that the words "against whom" deprive Plaintiffs of standing to cancel the deed because they are not parties to the deed.  In support, she offers quotations from *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808 (*Saterbak*), *Osborne v. Abels* (1939) 30 Cal.App.2d 729, and

*Reina v. Erassarret* (1949) 90 Cal.App.2d 418 (*Reina*).

Without elaboration, An quotes *Saterbak* for the proposition that, "[t]o state a cause of action under section 3412, [the plaintiff] must allege the assignment was void or voidable *against her*." (*Saterbak*, *supra*, 245 Cal.App.4th at p. 818.) She then quotes *Osborne* for the proposition that a plaintiff "without any title or interest in the property cannot maintain" a cause of action for cancellation (*Osborne, supra,* 30 Cal.App.2d at p. 731) and *Reina* for the proposition that "[a]s a general rule a party to the contract or privy thereto, and he alone, is entitled to maintain a suit to cancel or rescind it, and one who is a stranger to, or has no interest in the subject matter of the suit is not ordinarily entitled to such relief." (*Reina, supra*, 90 Cal.App.2d at pp. 423-424.)

An's quotation to *Reina* is grossly misleading, as she omits (without indication) the end of the quote: ". . . and where sufficient grounds exist for the rescission and cancellation of a conveyance, *it may be set aside at the suit of those succeeding to the rights of the grantor*." (*Reina, supra*, 90 Cal.App.2d at p. 424, italics added.) The *Reina* opinion continues, "it has been definitely held that relief by way of cancellation of an instrument *is not necessarily confined to a party to the instrument if his legal or equitable rights are affected thereby*." (*Ibid.,* italics added.)

*Page v. Garver* (1905) 146 Cal. 577 (*Page*), a case cited in *Reina* as holding that "an heir, as distinguished from a personal representative, may sue to set aside a deed made by his ancestor during his lifetime," is further illuminating. (*Reina, supra*, 90 Cal.App.2d at p. 423.) In that case, a widow, who met and wed the intestate decedent shortly before his death in 1899, sued the decedent's daughter from a prior marriage for cancellation of an

15

1896 deed transferring real property from the decedent to the daughter. (*Page*, *supra*, at p. 860.) According to the widow's allegations, the daughter procured the deed through undue influence. The daughter demurred on multiple grounds, including that the decedent's estate had not been administered and that the widow had "failed to show that she ha[d] any interest in the property . . . ." (*Id.* at pp. 860–861.) The court rejected both contentions. As to the former, the court noted precedent in which the lack of administration did not bar a suit by heirs. (*Id.* at p. 861, citing *Trubody v. Trubody* (1902) 137 Cal. 172.) As to the latter, it explained: "When [decedent] died he was the equitable owner of the property, with the right to assert his interest and attack his conveyance to defendant on the grounds alleged in the complaint. Dying intestate plaintiff succeeded to a widow's interest in his equitable estate." (*Page*, *supra,* at p. 861.)

Given that the Supreme Court found an adequate property interest to support the widow's cancellation claim in *Page*, we must find Plaintiffs' interest adequate here. After accounting for other heirs, the widow in *Page* claimed a share of seven fifteenths—less than half—of the decedents' property under the rules of intestate succession. Although their ultimate share has yet to be determined through probate, evidence adduced at trial was sufficient to establish that Plaintiffs held some interest in Pak's equitable estate, including his equitable interest in the Downey property.

An admits that Pak is the father of the Plaintiffs. She further admits that Pak died intestate. As a result, Plaintiffs were heirs of Pak entitled to tenancy in common interests in Pak's property. (Prob. Code, § 6402; see also *Johns v. Scobie*

(1939) 12 Cal.2d 618, 623 ["The decedent died intestate, and upon his death title to the property became vested in his heirs [citation] whether such heirs were known or unknown. [Citation.]  In the present case the heirs . . . were entitled to equal shares under the laws of succession, and therefore took title as tenants in common"].)  Though subject to administration, those interests vested in Plaintiffs immediately upon Pak's death. (Prob. Code, § 7000.)

We thus conclude that Plaintiffs had adequate interests in the property to pursue the cancellation claim.  As the trial court found "sufficient grounds exist for the rescission and cancellation of [the] conveyance" to An (see *Reina*, *supra*, 90 Cal.App.2d at p. 424), it properly "set it aside at the suit of those succeeding to the rights of the grantor." (*Ibid.*)  This was appropriate because Plaintiffs' "equitable rights" were affected by the transfer to An. (*Ibid.*)

## DISPOSITION

The judgment of the trial court is affirmed.  Costs are awarded to Plaintiffs.


HARUTUNIAN, J.*

We concur:


STRATTON, P. J.            GRIMES, J.

---

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17